

**CORPORATION SERVICE COMPANY**

**RCS / ALL**
**Transmittal Number: 15238419**
**Date Processed: 06/07/2016**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02117 |

| | |
|---|---|
| **Entity:** | Liberty Life Assurance Company Of Boston<br>Entity ID Number  2538002 |
| **Entity Served:** | Liberty Life Assurance Company of Boston |
| **Title of Action:** | John A. Briggs vs. Liberty Life Assurance Company of Boston |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Palm Beach County Circuit Court, Florida |
| **Case/Reference No:** | 502016CA005939XXXXMB |
| **Jurisdiction Served:** | Massachusetts |
| **Date Served on CSC:** | 06/07/2016 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Kent Huffman<br>561-838-9793 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH
COUNTY, FLORIDA

CASE NUMBER:
502016CA005939XXXXMB

JOHN A. BRIGGS,

     Plaintiff,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,
a foreign corporation,

     Defendant.

_____/

## SUMMONS

TO: Liberty Life Assurance Company of Boston
     84 State Street
     Boston, MA 02109

### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this Summons is served on you to file a written response to the attached Complaint/ Petition with the Clerk of this Court. A phone call will not protect you. You have 30 calendar days to serve a response to the attached Request to Produce. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you

do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book.

If you choose to file a written response yourself, at the same time your file your written response to the Court, you must also mail or take a copy of your written response to the Plaintiff's Attorney:

> Kent Huffman, Esquire
> 515 North Flagler Drive, Suite 401
> West Palm Beach, FL 33405
> (561) 838-9793
> Florida Bar Number 281522

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE:

You are commanded to serve this Summons and a copy of the Complaint and Notice to Produce in this lawsuit on the above-named Defendant.

Dated on _____Jun 06 2016_____, 2016.



SHARON R. BOCK
CLERK OF THE CIRCUIT COURT

By: _____

Deputy Clerk

Nidia Rios Gonzalez

IMPORTANTE

Usted ha sido demandado legalmente.  Tiene 20 Dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de  las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus  ingresos  y propiedades, o privado de sus derechos,  sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte cijointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger. Vous estes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, Si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans el relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite,  sans aucun preavis ulterieur du tribunal.    Il  y a d'autres  obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez  pas d'avocat, vous pourrierz telephoner a un service de reference d'avocats  ou  a  un  bureau  d'assistance    juridique    (figurant  a  l'annuaire  de telephones).

Si vous choisissiez de deposer vous-meme une reponse excrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir  ou  expedier une  copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignat ou a son avocat) nomme ci-dessous.

IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT, PERSONS IN NEED OF A SPECIAL ACCOMMODATIONS TO PARTICIPATE IN THIS PROCEEDING SHALL, WITHIN A REASONABLE TIME PRIOR TO ANY PROCEEDING, CONTACT THE ADMINISTRATIVE OFFICE OF THE COURT, 300 NORTH DIXIE HIGHWAY, ROOM 300, WEST PALM BEACH, FLORIDA 33401, TELEPHONE (561) 355-2431, 1-800-955-8771 (TDD), OR 1-800-955-8770, (V), VIA FLORIDA RELAY SERVICE.

DAPRE AKO KI FET AVEK AMERICANS WITH DISABILITIES ACT, TOUT MOUN KI GINYIN YUN BEZWEN ESPESIYAL POU AKOMODASIYON POU YO PATISIPE NAN PWOGRAM SA-A OWE, NAN YUN TAN REZONAB AVAN NINPOT ARANJMAN KAPAB FET, YO OWE KONTAKTE ADMINISTRATIVE OFFICE OF THE COURT, KI NAN NIMERO 300 NORTH DIXIE HIGHWAY CHAM NIMERO 300 WEST PALM BEACH, FLORIDA 33401 TELEFON NAN BE 561-355-2431 OUBYEN 1-800-955-8771 (TDD) OUBYEN 1-800-955-8770 (V) AN PASAN PA FLORIDA RELAY SERVICE.

DE ACWERDO CON EL ACTO 0 DECRETO DE LOS AMERICANOS CON IMPEDIMENTOS, INHABILITADOS, PERSONAS EN NECESIDAO DEL SERVICIO ESPECIAL PARA PARTICIPAR EN ESTE PROCEDIMIENTO DEBERAN, DENTRO DE UN TIEMPO RAZONABLE, ANTES DE CUALQUIER PROCEDIMENTO, PONERSE EN CONTACTO CON LA OFICINA ADMINISTRATIVA DE LA CORTE, 300 NORTH DIXIE HIGHWAY, OFICINA 300, WEST PALM BEACH, FLORIDA 33401, TELEFONE (561) 355-2431, 1-800-955-8771 (TDD), 0 1-800-955-8770 (V), VIA FLORIDA RELAY SERVICE.

EN ACCORDANCE AVEC LA LOI DES AMERICANS WITH DISABILITIES, LES PERSONNES EN BESOIN O'UNE ACCOMMODATION SPECIALE POUR PARTICIPER A CES PROCEDURES DOIVENT DANS UN TEMPS RAISQNABLE AVANT D'ENTREPRENDRE AUCUNE AUTRE DEMARCHE, CONTACTER L'OFFICE ADMINISTRATIVE DE LA COURT SITUE AU 300, NORTH DIXIE HIGHWAY, WEST PALM BEACH, FLORIDA 33401 LE TELEPHONE (561) 355-2431, 0U 1-800-955-8771 (TDD) OU 1-800-955-8770 (V) VIA FLORIDA RELAY SERVICE.

Filing # 42084912 E-Filed 05/27/2016 03:30:51 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH
COUNTY, FLORIDA

CASE NUMBER:


JOHN A. BRIGGS,

      Plaintiff,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,
a foreign corporation,

      Defendant.

_____/


## REQUEST TO PRODUCE

      Plaintiff, JOHN A BRIGGS, by and through the undersigned attorney,

pursuant to FRCP 1.350, hereby requests that Defendant, LIBERTY LIFE

ASSURANCE COMPANY OF BOSTON, produce for inspection and

photocopying at the offices of the undersigned counsel within thirty (30) days from

the date of service of this pleading:


      1. All non-privileged documents in your file relating to John A. Briggs.

2. A Privilege Log setting forth the title, date, a general description of any document in your file relating to John A. Briggs, which you assert to be privileged, and the legal basis for such privilege.

Kent Huffman, Esquire
HUTCHINSON & HUFFMAN, P.A.
515 North Flagler Drive, Suite 401
West Palm Beach, FL 33401
Telephone: (561) 838-9793
Fax: (561) 838-9034
Primary e-mail: kent@hutchhufflaw.com
Secondary e-mail: info@hutchhufflaw.com
Florida Bar Number 281522

2

Filing # 41963888 E-Filed 05/25/2016 02:29:04 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH
COUNTY, FLORIDA

CASE NUMBER:


JOHN A. BRIGGS,

      Plaintiff,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,
a foreign corporation,

      Defendant.

_____/


## COMPLAINT FOR DECLARATORY JUDGMENT
## AND REQUEST FOR SUPPLEMENTAL RELIEF


Plaintiff, JOHN A. BRIGGS, ("BRIGGS") sues Defendant LIBERTY LIFE

ASSURANCE COMPANY OF BOSTON, a foreign corporation, ("LIBERTY

MUTUAL") and complaining, alleges:


1. This is an action under F.S. 86.021 seeking a declaratory judgment

concerning the right of the BRIGGS to receive copies of records in his file

maintained by LIBERTY MUTUAL.

2. This Court has jurisdiction of this action under F.S. 86.01.

3. BRIGGS is a resident of Palm Beach County, Florida.

4. LIBERTY MUTUAL is a foreign corporation, with its principal place of business in Boston, Massachusetts, but has subjected itself to the jurisdiction of this Court by doing business in the State of Florida.

5. Venue of this action is proper in Palm Beach County, Florida, because this action arises out of a contract of disability insurance entered into in Palm Beach County, Florida.

6. On or about January 1, 2010, BRIGGS obtained a contract of disability insurance from LIBERTY MUTUAL. A copy of the contract is attached hereto as EXHIBIT "A".

7. BRIGGS subsequently became disabled.

8. LIBERTY MUTUAL acknowledged BRIGGS' disability and began paying BRIGGS under the disability policy.

2

9. BRIGGS has requested that LIBERTY MUTUAL provide BRIGGS with copies of the file documents LIBERTY MUTUAL has developed, but LIBERTY MUTUAL has refused to furnish copies of the requested materials.

10. BRIGGS is in doubt about whether he is entitled to the requested materials under the terms of the contract between the parties.

11. BRIGGS has a bona fide, actual, present and practical need for the requested declaratory judgment.

12. BRIGGS and LIBERTY MUTUAL are presently in controversy as to BRIGGS' right to the requested surveillance materials.

13. The interest of LIBERTY MUTUAL in the requested documents is adverse to the interest of BRIGGS.

14. BRIGGS and LIBERTY MUTUAL are the only parties whose presence before this Court is required to resolve the issues.

3

15. BRIGGS is not merely requesting legal advice from the Court, but is seeking a judicial determination as to BRIGGS' rights under the contract.

16. If the Court finds that BRIGGS is entitled to copies of the requested materials, under authority granted in F.S. 86.061, BRIGGS, prays that the Court enter an order directing LIBERTY MUTUAL to furnish copies of the materials to BRIGGS.

WHEREFORE, BRIGGS prays that the Court enter an order determining whether BRIGGS is entitled to the requested copies of the materials, and if so, directing LIBERTY MUTUAL to furnish copies of such materials to BRIGGS; awarding BRIGGS costs of this action; and for such other and further relief as this Court deems just and proper.

4

## DESIGNATION OF EMAIL ADDRESSES

PLEASE TAKE NOTICE that pursuant to FRJA 2.516(b)(1)(A), counsel of record for JOHN A. BRIGGS, Kent Huffman, Esquire, of HUTCHINSON & HUFFMAN, P.A., hereby designates the following email addresses for service:

Primary: kent@hutchhufflaw.com
Secondary: info@hutchhufflaw.com

Kent Huffman, Esquire
HUTCHINSON & HUFFMAN, P.A.
515 North Flagler Drive, Suite 401
West Palm Beach, FL 33401
Telephone: (561) 838-9793
Fax: (561) 838-9034
Primary e-mail: kent@hutchhufflaw.com
Secondary e-mail: info@hutchhufflaw.com
Florida Bar Number 281522

5

# GROUP DISABILITY INCOME POLICY

Sponsor:        **Wells Fargo & Company**

Policy Number:  GF3-850-289424-01

Effective Date:  January 1, 2010

Governing Jurisdiction is Minnesota and subject to the laws of that State.

Premiums are due and payable monthly on the first day of each month.

Policy Anniversaries shall occur each January 1st beginning in 2011.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay benefits provided by this policy in accordance with its provisions.  This policy provides Long Term Disability coverage.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent.  Under no circumstances will the Sponsor be deemed the agent of Liberty.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117

## NON-PARTICIPATING

SECRETARY.                                     PRESIDENT.

**EXHIBIT "A"**

Form ADOP.7                                                          11-25-2009 WF

## TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

## SECTION 1 - SCHEDULE OF BENEFITS

**ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS**

**Minimum Hourly Requirement:**

Employees working a minimum of 17.5 regularly scheduled hours per week

**Long Term Disability Benefits:**

Class 1:    All Active Full-time and Part-time team members covered in the Basic Long Term Disability Plan

Class 2:    All Active Full-time and Part-time team members enrolled in the Optional Long Term Disability Plan

Note:    Temporary and seasonal team members, flex team members and Employees who are not United States citizens or legal residents working in the United States are not covered under this policy. The term "team members" will be herein defined as Employees.

**Eligibility Waiting Period:**

1.    If the Covered Person is employed by the Sponsor on the policy effective date – First of the month following one full month of continuous, Active Employment

2.    If the Covered Person begins employment for the Sponsor after the policy effective date – First of the month following one full month of continuous, Active Employment

**Employee Contributions Required:**

Applicable to Class 1

No

Applicable to Class 2

Yes

Form ADOP.7                                                    Schedule of Benefits

## SECTION 1 - SCHEDULE OF BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE**

**Elimination Period:**

> 26 weeks

**Amount of Insurance:**

Applicable to Class 1:

> 50% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $20,833 (or an annual maximum covered pay of $500,000), less Other Income Benefits and Other Income Earnings as outlined in Section 4.

Applicable to Class 2:

> 65% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $27,083 (or 65% of the annual maximum covered pay of $500,000), less Other Income Benefits and Other Income Earnings as outlined in Section 4.

**Maximum Basic Monthly Earnings on which the Benefit is Based: $41,666**

Family Care Expense Benefit is $325 per month per Family Member.

**Own Occupation Duration:**

24 Month Own Occupation

## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $100.00 or 10.00% of the Covered Person's Gross Monthly Benefit, whichever is greater.

**Maximum Benefit Period:**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | Greater of SSNRA* or to age 65 (but not less than 5 years) |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

\*   SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

## SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy.  The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1.  on a full-time or part-time basis and paid regular earnings;

2.  for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work:

    a.   at the Sponsor's usual place of business; or
    b.   at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1.  a weekend (except where one or both of these days are scheduled work days);
2.  holidays (except when the holiday is a scheduled work day);
3.  paid vacations;
4.  any non-scheduled work day;
5.  an excused leave of absence.

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA  02493.

**"Annual Enrollment Period"** or **"Enrollment Period"** means the period before each policy anniversary so designated by the Sponsor and Liberty during which an Employee may enroll for coverage under this policy.

## SECTION 2 - DEFINITIONS
### (Continued)

"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

"Application" is the document designated in Section 9; it is attached to and is made a part of this policy.

"Appropriate Available Treatment" means care or services which are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;
2. accessible within the Covered Person's geographical region;
3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;
4. in accordance with generally accepted medical standards of practice.

"Basic Monthly Earnings" Applicable to Job Class Codes 1 and 5 Employees, a benefits base, up to a maximum of $500,000 annually. Benefits base is calculated quarterly and earnings are annualized based on base salary and incentives, incentive bonuses and/or commissions paid in the last 12 months, divided by the number of months with earnings greater than $0.

Benefits base includes amounts designated as before-tax contributions the Employee makes to the Sponsor's other team member benefit plans. Benefits do not include some forms of compensation such as overtime pay, shift differentials, hiring and retention bonuses, non-cash awards, and perquisites such as parking or automobile allowance or commute subsidies.

Applicable to Job Class Code 2, covered pay in effect on the day before the initial date of the Employee's Disability. Covered pay is the annual base salary plus eligible certified incentive compensation that has been paid in the last 12 months.

Base salary is the hourly rate of pay multiplied by the number of standard hours indicated on the Sponsor's payroll system and takes into account the number of working days each calendar year. The amount is multiplied by the number of weeks in a calendar year to determine the base salary.

Base salary includes amounts designated as before-tax contributions the Employee makes to the Sponsor's other team member benefit plans, but does not include overtime pay, shift differential, incentives, bonuses, and commissions or perquisites such as parking or automobile allowance or commute subsidies.

"Covered Person" means an Employee insured under this policy.

## SECTION 2 - DEFINITIONS
### (Continued)

**"Disability"** or **"Disabled"** means:

    i.      that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii.     thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

**"Disability Benefits under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan due to Disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

## SECTION 2 - DEFINITIONS
### (Continued)

**"Domestic Partner"** means an unmarried person of the same or opposite sex with whom the Covered Person shares a committed relationship, are jointly responsible for each other's welfare and financial obligations, at least 18 years of age and mentally competent to consent to a contract, not related by blood to a degree that could prohibit legal marriage in the state where they legally reside, maintain the same residence(s) and are not married to or legally separated from anyone else.   A Domestic Partner certification must be completed and filed with the Sponsor before the partner can be designated as an Eligible Survivor.

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse or Domestic Partner, if living, otherwise the Covered Person's children under age 25.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Elimination Period"** means a period of consecutive days of Disability or Partial Disability for which no benefit is payable.  The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any thirty  or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Person, if required, when enrolling for coverage.  This form must be satisfactory to Liberty.

**"Evidence of Insurability"** means a statement of proof of an Employee's medical history upon which acceptance for insurance will be determined by Liberty.

## SECTION 2 - DEFINITIONS
### (Continued)

"**Extended Treatment Plan**" means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

"**Family and Medical Leave**" means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

"**Family Member**" means a person living with the Covered Employee as part of the household and is incapable of independent living, regardless of age, due to mental or physical handicap as defined by applicable law. It also includes the Covered Employee's or Covered Employee's spouse's child, legally adopted child or child for whom the Covered Person or Covered Person's spouse is the legal guardian under age 13.

"**Family Status Change**" means any one of the following events that may occur:
1. the Employee's marriage or divorce;
2. the Employee's filing or rescinding of a Domestic Partner certification;
3. the birth of a child to the Employee;
4. the adoption of a child by the Employee;
5. the death of the Employee's spouse or Domestic Partner or child;
6. the commencement or termination of employment of the Employee's spouse or Domestic Partner;
7. the change from part-time employment to full-time employment by the Employee or the Employee's spouse or Domestic Partner;
8. the change from full-time employment to part-time employment by the Employee or the Employee's spouse or Domestic Partner;
9. the taking of unpaid leave of absence by the Employee or the Employee's spouse or Domestic Partner;
10. judgments, decrees or orders qualified under Section 125 of the Internal Revenue Code.

"**Gross Monthly Benefit**" means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

"**Hospital**" or "**Institution**" means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

## SECTION 2 - DEFINITIONS
(Continued)

"**Initial Enrollment Period**" means one of the following periods during which an Employee may first enroll for coverage under this policy:

1. for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

2. for an Employee who becomes eligible for insurance after the policy effective date, the period which ends 45 days after his Eligibility Date.

"**Injury**" means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1. any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2. any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

"**Last Monthly Benefit**" means the net Monthly Benefit payable to the Covered Person prior to his death.

"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

Definitions

## SECTION 2 - DEFINITIONS
(Continued)

**"Mental Illness"** means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

**"Monthly Benefit"** means the monthly amount payable by Liberty to the Disabled or Partially Disabled Covered Person.

**"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the local economy.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Family Status Change**

When an Employee experiences a Family Status Change, he may keep his coverage at the same level or make one of the following changes in coverage:

1. a decrease in coverage;

2. an increase in coverage without Evidence of Insurability subject to the Pre-Existing Condition Exclusion defined herein.

The Covered Person must apply for the change in coverage within 60 days of the date of the Family Status Change. Such changes in coverage must be due to or consistent with the reason that the change in coverage was permitted. A change in coverage is consistent with a Family Status Change only if it is necessary or appropriate as the result of the Family Status Change.

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

1. For Coverage Applied for During Initial Enrollment Periods:

   a. an Employee will be insured for non-contributory coverage on his Eligibility Date.
   b. an Employee will be insured for contributory coverage on the date the Employee makes application for insurance if he enrolls on or before the 45th day after his Eligibility Date; or
   c. an Employee who does not enroll for contributory coverage on or before the 45th day after his Eligibility Date, or terminated his insurance while continuing to be eligible must submit an application and Evidence of Insurability to Liberty for approval, at the Employee's expense. The Employee will be insured on the date Liberty gives its approval.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Effective Date of Insurance (Continued)**

2.  For Contributory Coverage Applied for During Annual Enrollment Periods

    An Employee will be insured for the selected contributory coverage on the first day of the next policy anniversary.

3.  For Coverage Applied for Due to a Family Status Change

    An Employee will be insured for the selected coverage on the later of the following dates, provided he applies or enrolls for the change in coverage before the end of the 60th day following the Family Status Change:

    a.   1st of the month following the date of the Family Status Change;
    b.   the date the Employee applies or enrolls for the change in coverage.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

## SECTION 4 – DISABILITY INCOME BENEFITS

**LONG TERM DISABILITY COVERAGE**

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy.  The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1.  Disability;

2.  Regular Attendance of a Physician; and

3.  Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense.  In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Monthly Benefit will not:

1.  exceed the Covered Person's Amount of Insurance; or

2.  be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Disability Monthly Benefit**

To figure the amount of Monthly Benefit:

1.  Take the lesser of:

    a.  the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

    b.  the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

2.  Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits.  However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability**

When Liberty receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness and requires the Regular Attendance of a Physician, he may be eligible to receive a Monthly Benefit, subject to any other provisions of this policy. To be eligible to receive Partial Disability benefits, the Covered Person may be employed in his Own Occupation or another occupation, must satisfy the Elimination Period and must be earning between 20.00% and 80.00% of his Basic Monthly Earnings.

A Monthly Benefit will be paid for the period of Partial Disability if the Covered Person gives to Liberty Proof of continued:

1. Partial Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Partially Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Partial Disability, the Injury must occur and Partial Disability must begin while the Employee is insured for this coverage.

**Loss of Earnings Monthly Calculation with Work Incentive Benefit**

For the first 12 Months, the work incentive benefit will be an amount equal to the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits, without any reductions from earnings. The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of the Covered Person's Basic Monthly Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his Basic Monthly Earnings.

Thereafter, the Monthly Benefit will be reduced by 50% of the Covered Person's earnings received while he is Partially Disabled.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

Form ADOP.7

Long Term Partial Disability with Work Incentive
Loss of Earnings

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE (Continued)**

**Mental Illness and/or Substance Abuse Limitation**

Applicable to Mental Illness:

The benefit for Disability due to Mental Illness will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Mental Illness at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Mental Illness, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

Applicable to Substance Abuse:

The benefit for Disability due to Substance Abuse will not exceed a period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Rehabilitation Program**

For the purpose of this provision, "Rehabilitation Program" means a comprehensive individually tailored, goal oriented program to return a Disabled Covered Person to Active Employment on either a part-time or full-time basis in an occupation for which the Covered Person is reasonably qualified, taking into the Covered Person's training, education, experience and past earnings. The services offered may include, but are not limited to, the following:

1.  physical therapy;
2.  occupational therapy;
3.  work hardening programs;
4.  psychological and vocational counseling;
5.  rehabilitative employment; and
6.  vocational rehabilitation services.

**Family Care Expense Benefit**

If the Covered Person fully participates in an approved Rehabilitation Program recommended by Liberty, Liberty will pay a Family Care Expense Benefit when the Covered Person is disabled and incurring expenses to provide care for his Family Member.

To receive this benefit, the Covered Person must provide satisfactory proof that the Covered Person is incurring expenses that entitle him to the Family Care Expense Benefit. Such expenses do not include expenses for which the Covered Person is eligible for reimbursement under any other group plan or from any other source.

The benefit payable is shown in the Schedule of Benefits. The maximum benefit payable is shown in the Schedule of Benefits.

Family Care Expense Benefit will end on the earlier of the following:
1.  24 months following the Elimination Period;
2.  the date the Covered Person is no longer incurring expenses for his Family Member;
3.  the date the Covered Person no longer participates in the Rehabilitation Program; or
4.  any other date payments would stop in accordance with this plan.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE (Continued)**

**Five Months Survivor Benefit**

Liberty will pay a lump sum benefit to the Eligible Survivor when Proof is received that a Covered Person died:

1.  after Disability had continued for 180 or more consecutive days;  and

2.  while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to five times the Covered Person's Last Monthly Benefit.

If the survivor benefit is payable to the Covered Person's children, payment will be made in equal shares to the children, including step children and legally adopted children.  However, if any of said children are minors or incapacitated, payment will be made on their behalf to the court appointed guardian of the children's property.  This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If an overpayment is due to Liberty at the time of a Covered Person's death, the benefit payable under this provision will be applied toward satisfying the overpayment.

Form ADOP.7

Long Term Disability
5 Month Survivor

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits means:**

1. The amount for which the Covered Person is eligible under:

   a. Workers' or Workmen's Compensation Laws;
   b. Occupational Disease Law;
   c. Title 46, United States Code Section 688 (The Jones Act);
   d. Railroad Retirement Act;
   e. any governmental compulsory benefit act or law; or
   f. any other act or law of like intent.

2. The amount of any Disability benefits which the Covered Person is eligible to receive under:
   a. any other group insurance plan of the Sponsor;
   b. any governmental retirement system as a result of his employment with the Sponsor ; or
   c. any individual insurance plan where the premium is wholly or partially paid by the Sponsor. However, Liberty will only reduce the Monthly Benefit if the Covered Person's Monthly Benefit under this policy, plus any benefits that the Covered Person is eligible to receive under such individual insurance plan exceed 100% of the Covered Person's Basic Monthly Earnings. If this sum exceeds 100% of Basic Monthly Earnings, the Covered Person's Monthly Benefit under this policy will be reduced by such excess amount.

3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:

   a. the amount of any Disability Benefits under a Retirement Plan, or Retirement Benefits under a Retirement Plan the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and
   b. the amount the Covered Person receives as retirement payments when he reaches the later of age 62, or normal retirement age as defined in the Sponsor's plan.

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

   a. the Covered Person receives or is eligible to receive; and
   b. his spouse, child or children receives or are eligible to receive because of his Disability; or
   c. his spouse, child or children receives or are eligible to receive because of his eligibility for retirement benefits.

   With respect to this provision, benefits will not be reduced for social security benefits provided to the child or children if the Covered Person is not the custodial parent.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

LONG TERM DISABILITY COVERAGE (Continued)

**Other Income Benefits and Other Income Earnings (Continued)**

**Other Income Benefits (Continued):**

5. Any amount the Covered Person receives from any unemployment benefits.

Liberty will not reduce the Covered Person's Monthly Benefit by any income benefits received from any state or federal motor vehicle "No-Fault" coverage.

Liberty will not reduce the Covered Person's Monthly Benefit by any increase in disability benefits received or receivable under the federal Social Security Act, the Railroad Retirement Act, any Veteran's Disability Compensation and Survivor Benefits Act, Worker's Compensation, or any similar federal or state law.

**Other Income Earnings means:**

1. the amount of earnings the Covered Person earns or receives from any form of employment including severance; and

2. any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

Other Income Benefits, except retirement benefits, must be payable as a result of the same Disability for which Liberty pays a benefit. The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.

## SECTION 4 – DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE (Continued)**

**Estimation of Benefits**

Liberty will reduce the Covered Person's Disability or Partial Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person and his dependents.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1.   provides satisfactory proof of application for Other Income Benefits;

2.   signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits;

3.   if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Liberty determines that further appeals are not likely to succeed; and

4.   if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Liberty determines that further appeals are not likely to succeed.

Liberty will not estimate or reduce for any benefits under the Sponsor's pension or retirement benefit plan according to applicable law, until the Covered Person actually receives them.

In the event that Liberty overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Liberty will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

**Social Security Assistance**

Liberty may help a Covered Person in applying for Social Security Disability Income Benefits. In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Liberty. Such assistance will be provided only if Liberty determines that assistance would be beneficial.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

#### Lump Sum Payments

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and are meant to compensate the Covered Person for any one or more of the following:

1. loss of past or future wages;
2. impaired earnings capacity;
3. lessened ability to compete in the open labor market;
4. any degree of permanent impairment; and
5. any degree of loss of bodily function or capacity;

will be prorated on a monthly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, the lesser of:

   a. the remainder of the Maximum Benefit Period; or
   b. 5 years.

#### Protection of Monthly Benefit Amount

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this policy. This provision does not apply to increases received from any form of employment.

#### Prorated Benefits

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th for each day for such period of Disability.

#### Discontinuation of the Long Term Disability Benefit

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;

2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE (Continued)**

**Discontinuation of the Long Term Disability Benefit (Continued)**

The Monthly Benefit will cease on the earliest of: (Continued)

3.      the date the Covered Person refuses to be examined or evaluated at reasonable intervals;

4.      the date the Covered Person refuses to receive Appropriate Available Treatment;

5.      the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;

6.      the date the Covered Person is able to work in his Own Occupation on a part-time basis, but chooses not to;

7.      on the first day of the month following the date the Covered Person refuses to fully participate in a Rehabilitation Program recommended by Liberty according to the individually written Rehabilitation Program;

8.      the date the Covered Person's current Partial Disability earnings exceed 80.00% of his Basic Monthly Earnings;

     Because the Covered Person's current earnings may fluctuate, Liberty will average earnings over three consecutive months rather than immediately terminating his benefit once 80.00% of Basic Monthly Earnings has been exceeded.

9.      the date the Covered Person is no longer Disabled according to this policy;

10.     the end of the Maximum Benefit Period; or

11.     the date the Covered Person dies.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE (Continued)**

**Recurrent Periods of Disability**

With respect to this policy, "Recurrent Periods of Disability" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Recurrent Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1. returns to his Own or Any Occupation on an Active Employment basis for less than six continuous months; and

2. performs all the Material and Substantial Duties of his Own Occupation.

To qualify for a Recurrent Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own or Any Occupation on an Active Employment basis for six continuous months or more, the Recurrent Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

**Long Term Disability
Recurrent Disability**

Form ADOP.7

# SECTION 5 - EXCLUSIONS

**GENERAL EXCLUSIONS**

This policy will not cover any Disability due to:

1. war, declared or undeclared, or any act of war;

2. active Participation in a Riot;

3. commission of or attempt to commit a felony or to which a contributing cause was the Covered Person's being engaged in an illegal occupation.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

## SECTION 5 - EXCLUSIONS
### (Continued)

**LONG TERM DISABILITY COVERAGE**

**Pre-Existing Condition Exclusion**

No claim for loss incurred or Disability or Partial Disability as defined in this policy commencing after 12 months from the Covered Person's effective date shall be denied because of a Pre-Existing Condition.

"Pre-Existing Condition" means a disease or physical condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

**For Employees who Increase their Coverage Option During an Annual Enrollment Period or Due to a Family Status Change:**

This policy will not cover any increase in amount of coverage for any Disability or Partial Disability:

1.  which is caused or contributed to by, or results from, a Pre-Existing Condition; and

2.  during the first 12 months immediately after the effective date of this policy on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

"Pre-Existing Condition" means a disease or physical condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of increased coverage.

## SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1. the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2. the date the Covered Person is no longer in an eligible class;

3. the date the Covered Person's class is no longer included for insurance;

4. the last day for which any required Employee contribution has been made;

5. the date employment terminates.   Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

   a. the Elimination Period; and
   b. any period during which premium is being waived.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

## SECTION 6 - TERMINATION PROVISIONS
### (Continued)

**Policy Termination**

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 3 months prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3. Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 6 months in advance if:

   a. the number of Employees insured is fewer than 10; or

   b. less than 100.00% of all the Employees eligible for any non-contributory insurance are insured for it; or

   c. less than 25.00% of all the Employees eligible for any contributory insurance are insured for it; or

   d. the Sponsor fails:

      i. to furnish promptly any information which Liberty may reasonably require; or
      ii. to perform any other obligations pertaining to this policy.

4. Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 6 months before the termination is effective.

5. Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

**Termination of Coverage Option(s)**

**Participation Requirements**

Liberty may terminate coverage or any coverage option afforded hereunder on any premium due date by giving written notice to the Sponsor at least 6 months in advance:

1. if the overall participation for all coverage options falls below 25.00% of the Employees eligible for benefits under this policy; and

2. if less than 25.00% of the Employees eligible for each coverage option are insured for it.

Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

## SECTION 7 - GENERAL PROVISIONS

**Assignment**

No assignment of any present or future right or benefit under this policy will be allowed.

**Complete Contract - Policy Changes**

1. This policy is the entire contract. It consists of:

   a. all of the pages; and
   b. the attached signed Application of the Sponsor; and
   c. if contributory each Employee's signed application for insurance.

2. This policy may be changed in whole or in part. Only an officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3. No other person, including an agent, may change this policy or waive any part of it.

**Conformity with State Statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

**Employee's Certificate**

Liberty will provide a Certificate to the Sponsor for delivery to Covered Persons. It will state:

1. the name of the insurance company and the policy number;
2. a description of the insurance provided;
3. the method used to determine the amount of benefits;
4. to whom benefits are payable;
5. limitations or reductions that may apply;
6. the circumstances under which insurance terminates; and
7. the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

**Examination**

Liberty, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty. This right may be used as often as reasonably required.

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Furnishing of Information - Access to Records**

1. The Sponsor will furnish at regular intervals to Liberty:

   a. information relative to Employees:

      i.   who qualify to become insured;
      ii.  whose amounts of insurance change; and/or
      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably required.

   The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not:

   a. deprive an Employee of insurance;
   b. affect an Employee's Amount of Insurance; or
   c. effect or continue an Employee's insurance which otherwise would not be in force.

**Interpretation of the Policy**

Liberty shall possess the authority to construe the terms of this policy and to determine benefit eligibility hereunder.

**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue. The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after Proof of claim has been given; or

2. more than three years after the time Proof of claim is required.

Form ADOP.7                                                          General Provisions

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Misstatement of Age**

If a Covered Person's age has been misstated, all amounts payable under this policy will be such as the premium paid would have purchased at the correct age.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.

**Notice and Proof of Claim**

1. **Notice**

   a. Notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Liberty.

   b. When written notice of claim is applicable and has been received by Liberty, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Liberty written Proof of claim without waiting for the forms.

2. **Proof**

   a. Proof of loss must be given to Liberty no later than 90 days after the end of the Elimination Period.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

   c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Liberty within 30 days of the request for such Proof.

Liberty reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

**Payment of Claims**

The benefit is payable to the Covered Person.

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Right of Recovery**

Liberty has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Liberty in processing a claim; or
3. the Covered Person's receipt of any Other Income Benefits.

Liberty may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;
2. reducing any benefits payable under this policy;
3. taking any appropriate collection activity available including any legal action needed; and
4. placing a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Liberty.

**Statements**

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees). No representation by:

1. the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2. any Employee in enrolling for insurance under this policy will be used to reduce or deny a claim unless a copy of the Enrollment Form, signed by the Employee if required, is or has been given to the Employee.

**Subrogation and Reimbursement**

When Liberty has paid benefits under this policy in an amount in excess of $5,000 to a Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against any third party. Liberty may require an assignment from the Covered Person of his right to recover to the extent of Liberty's payment.

Liberty's subrogation rights under this provision will be valid only if the Covered Person is fully compensated for his loss.

Liberty's subrogation right is subject to subtraction for actual monies paid to account for the pro rata share of the covered person's costs, disbursements, and reasonable attorney fees, and other expenses incurred in obtaining the recovery from another source unless Liberty is separately represented by an attorney.

If Liberty is separately represented by an attorney, Liberty and the covered person, by their attorneys, may enter into an agreement regarding allocation of the covered person's costs, disbursements, and reasonable attorney fees and other expenses. If Liberty and covered person cannot reach agreement on allocation, Liberty and covered person shall submit the matter to binding arbitration.

Nothing in this section shall limit Liberty's right to recovery from another source which may otherwise exist at law. For the purposes of this provision, full recovery does not include payments made by Liberty to or for the benefit of a covered person.

Form ADOP.7                                                              General Provisions

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Workers' Compensation**

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

General Provisions

# SECTION 8 - PREMIUMS

**Premium Rates**

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

A change in the initial premium rate(s) will not take effect within the first 3 years except that Liberty may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1. a change occurs in the policy design;

2. a division, subsidiary or Associated Company is added to or deleted from this policy;

3. when the number of Covered Persons changes by 15.00% or more from the number insured on this policy's effective date; or

4. a change in existing law which affects this policy.

No premium may be changed unless Liberty notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Liberty and the Sponsor agree.

**Payment of Premiums**

1. All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2. All payments made to or by Liberty shall be in United States dollars.

3. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

4. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.

5. If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

6. Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

   1. the current policy year; and

   2. the immediately preceding policy year.

## SECTION 8 - PREMIUMS
### (Continued)

**Grace Period**

This is the 31 days following a premium due date, other than the first, during which premium payment may be made.  During the grace period this policy shall continue in force, unless the Sponsor has given Liberty written notice 31 days in advance of discontinuance of this policy.

**Waiver of Premium**

Premium payments for a Covered Person are waived during any period for which benefits are payable. If coverage is to be continued, premium payments must be resumed following a period during which they were waived.

# AMENDMENT NO. 1

It is agreed the following changes are hereby made to this policy: GF3-850-289424-01

| Changes | Additions | Deletions |
|---|---|---|
| - added the Family Care Expense benefit<br>- revised the Active Employment, Family Status Change, Own Occupation, and Retirement Plan definitions<br>- revised the initial enrollment period to include Family Status Change events<br>- changed the effective date of coverage applied due to a Family Status Change<br>- modified the partial disability calculation<br>- added a 5 month survivor benefit<br>- revised the Successive Periods of Disability provision<br>- removed exclusions for disabilities caused by self-inflicted injuries, cosmetic, and gender change surgeries<br>- changed the Pre-existing Condition Exclusion wording<br>- modified the Payment of Claims section<br>- revised the Interpretation of the Policy and Subrogation provisions | Form ADOP.7 | Form ADOP |

The effective date of this change is January 1, 2010.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 7th day of May, 2010.

Issued to and Accepted by:

Wells Fargo & Company
Sponsor

By _____
Signature and Title of Officer

Liberty Life Assurance Company of Boston

# AMENDMENT NO. 2

It is agreed the following changes are hereby made to this policy: GF3-850-289424-01

| Changes | Additions | Deletions |
|---|---|---|
| - Revised the Mental Nervous and Substance Abuse limitation to add the extension of benefits during Hospital confinement wording.<br><br>- Added language that terminates the LTD benefit if the claimant refuses to participate in the Rehab program.<br><br>- Revised the definition of Basic Monthly Earnings. | Form ADOP.7 R (1) | Form ADOP.7 |

The effective date of this change is January 1, 2010.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 22nd day of December, 2010.

Issued to and Accepted by:

<u>Wells Fargo & Company</u>
Sponsor

By _____
Signature and Title of Officer

Liberty Life Assurance Company of Boston

Form ADOP-AMENDMENT                                        Delete/Add Policy Pages

## AMENDMENT NO. 3

It is agreed the following changes are hereby made to this policy:  GF3-850-289424-01

| Changes | Additions | Deletions |
|---|---|---|
| Added a late enrollment option subject to providing satisfactory Evidence of Insurability | Form ADOP.7 R (1) Form ADOP.7 R (2) | Form ADOP.7 Form ADOP.7 R (1) |

The effective date of this change is January 1, 2011.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 22nd day of December, 2010.

Issued to and Accepted by:

<u>Wells Fargo & Company</u>
Sponsor

By _____
Signature and Title of Officer

Liberty Life Assurance Company of Boston

<u>Jean Scan</u>

Liberty Life
84 State
Boston

